STATE OF NORTH CAROLINA v. BENNIE BOYCE TESSENAR

No. 7226SC446

(Filed 2 August 1972)

1. Criminal Law § 75— Miranda warnings — defendant not in custody

In a murder prosecution, defendant's volunteered statement made to an officer before he was taken into custody that he was "the man who did it" was admissible, since "Miranda warnings" are required only where a defendant is being subjected to custodial interrogation.

2. Criminal Law § 51— expert testimony — absence of finding by court

The trial court's failure specifically to find a witness an expert in the field of firearms and munitions before allowing the witness to give opinion testimony did not constitute reversible error where there was plenary evidence that the witness was fully experienced in his field and had test fired the gun with respect to which he testified.

3. Homicide § 20— photograph of deceased's body — admissibility — illustration of testimony

A photograph depicting the body of the deceased was competent for the purpose of illustrating the testimony of witnesses despite the fact that it was gory or gruesome.

4. Criminal Law § 99— judge's expression of opinion

The judge's inquiry made to the jury as to whether they would return after supper "and work a while tonight" did not constitute coercion of the jury or an expression of opinion.

APPEAL by defendant from *McLean, Judge,* 17 January 1972 Schedule "C" Criminal Session of Superior Court held in MECKLENBURG County.

Defendant was charged in a bill of indictment, proper in form, with first degree murder. The solicitor elected in open court to seek a verdict of guilty of second degree murder, manslaughter "or whatever the evidence might warrant." Defendant entered a plea of not guilty.

Mrs. Margaret Kirkland testified for the State that she and deceased, whom she was dating, were at defendant's trailer home on the night of 24 September 1971. All of them had been drinking. About midnight deceased and defendant got into an argument over Mrs. Kirkland but they stopped and shook hands. Later the two men started pushing each other. They were not fighting but just pushing. Mrs. Kirkland started to leave but was called back by deceased who assured her they would not

State v. Tessenar

fight anymore. Defendant then went to the back of his trailer and got his shotgun. Mrs. Kirkland described the events which followed: "Edgar was standing right in front of the couch. Bennie went back, I think, in the bedroom and came back with a gun. I don't remember how he was carrying it, but he come back and pointed it towards Edgar and it frightened me. Edgar sat down on the couch. I begged Bennie not to kill him. I grabbed hold of the gun at the barrel and gripped it and he pushed me away and told me to get out of his damn way. He pushed me towards the bar. Bennie looked at Edgar and pointed the gun back towards him and he said, 'You have made me mad and I am going to kill you, you god-damned son-of-a-bitch,' and he cocked the gun and shot him. At this time Edgar was sitting on the couch. He did not stand up or attempt to stand up. Bennie was standing two or three feet from Edgar with the gun."

Police officer D. G. Lutrick went to the scene some time after 2:00 a.m. on the morning of 25 September 1971. As he pulled up to the trailer park, he asked two men whom he observed standing near defendant's trailer if they were having trouble there. Defendant, who was one of the two men, replied, "I am the man that did it." Officer Lutrick entered the trailer. He observed the deceased leaning against the back of the couch. Deceased had a wound in the area of the face approximately an inch in diameter, and in the opinion of the officer, he was dead at that time. A shotgun, offered into evidence as State's Exhibit 1, was found inside the trailer.

Defendant testified that his gun discharged accidentally as he jerked it from the closet in order to protect himself from deceased who was threatening him with a pistol. He stated he was from 12 to 14 feet from deceased at the time the gun discharged. Defendant also stated that after the shooting Mrs. Kirkland ran from the trailer with deceased's pistol.

The State offered rebuttal evidence tending to show that defendant's gun was discharged in close proximity to deceased and that defendant told a neighbor immediately after the killing that he shot deceased because deceased had a knife.

The jury returned a verdict of guilty of manslaughter. Defendant appeals from judgment entered on the verdict imposing an active prison sentence of from 15 to 20 years.

*Attorney General Morgan by Associate Attorney Lloyd for the State.*

*Jerry W. Whitley for defendant appellant.*

GRAHAM, Judge.

Defendant's first assignment of error challenges the sufficiency of the State's evidence. This assignment of error is overruled.

[1] Defendant next contends the court erred in permitting Officer Lutrick to testify over objection that defendant told him, "I am the man who did it." This contention is without merit. The record affirmatively shows that this statement was volunteered by defendant before he was taken into custody. "Miranda warnings" are required only where a defendant is being subjected to custodial interrogation. *State v. Fletcher* and *State v. Arnold,* 279 N.C. 85, 181 S.E. 2d 405; *State v. Meadows,* 272 N.C. 327, 158 S.E. 2d 638.

[2] Defendant objected to testimony by a witness as to his opinion with respect to the distance State's Exhibit #1 (defendant's shotgun) was from the deceased when it fired the shot which inflicted the fatal wound. The court did not enter a specific finding that the witness was an expert in the field of firearms and munitions. However, there was plenary evidence to show that the witness was fully experienced in this field, and also that he had test fired the gun in question. Under these circumstances, the court's failure to specifically find the witness to be an expert does not constitute reversible error. "[T]he failure of the trial judge to specifically find that the witness is an expert before allowing him to give expert testimony will not sustain a general objection to his opinion evidence if it is in response to an otherwise competent question, and if there is evidence in the record on which the court could have based a finding that the witness had expert qualifications. In such a case, it will be assumed that the court found the witness to be an expert; otherwise, it would not have permitted him to answer the question." *Teague v. Power Co.,* 258 N.C. 759, 764, 129 S.E. 2d 507, 511.

[3] Defendant's next assignment of error is directed to the admission of a photograph depicting the body of the deceased on the couch inside the trailer. The record clearly indicates

that this photograph was admitted only for the purpose of illustrating the testimony of witnesses. It was competent for that purpose. *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824; *State v. Matthews,* 191 N.C. 378, 131 S.E. 743. The fact the photograph is gory or gruesome does not render it incompetent. *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10; *State v. McCain,* 6 N.C. App. 558, 170 S.E. 2d 531.

[4] Defendant's final assignment of error is directed to an inquiry made by the judge to the jury at 7:00 p.m. as to whether they would be willing to return at 8:00 p.m., after supper, "and work a while tonight." We find nothing in the judge's statement tending to suggest, as defendant contends, that the jury would be there all night if they did not agree upon a verdict. Nothing in the court's language tends in any way to coerce the jury or intimate an opinion as to what the verdicts should be. *State v. McVay* and *State v. Simmons,* 279 N.C. 428, 183 S.E. 2d 652. We note that defendant did not move for a mistrial nor object to the court's statement at the time it was made. The objection he makes now is overruled.

After reviewing the entire record we conclude that defendant was afforded a fair trial free from prejudicial error.

No error.

Judges PARKER and VAUGHN concur.