STATE OF NORTH CAROLINA v. JOE BRYANT
— AND —
STATE OF NORTH CAROLINA v. RAYMOND MITCHELL FLOYD

No. 7226SC592

(Filed 22 November 1972)

1. Indictment and Warrant § 9; Obscenity — dissemination of obscenity — description of films — sufficiency of indictment

The trial court properly denied defendants' motions to quash warrants charging them with disseminating obscenity in a public place in violation of G.S. 14-190.1 where the warrants specifically described the motion pictures shown in defendants' place of business and alleged to be obscene.

2. Obscenity — dissemination of obscenity — guilty knowledge required

G.S. 14-190.1 requires a finding of intent and guilty knowledge before a defendant may be convicted thereunder for dissemination of obscenity in a public place.

3. Constitutional Law § 18— obscenity statute — constitutionality

The statute proscribing dissemination of obscenity in a public place specifically defines the elements of obscenity and hence is not unconstitutional on grounds of vagueness or overbreadth.

4. Criminal Law § 51— opinion testimony — no finding of expertise — testimony admissible

Where defendants did not request a finding as to whether four State's witnesses who gave opinions on the issue of obscenity were experts, the trial court properly overruled defendants' objections to testimony by the witnesses, particularly since there was ample evidence in the record upon which to base a finding that each of the witnesses was an expert.

5. Obscenity — uncontrovertibly obscene films — dissemniation of obscenity — sufficiency of evidence

Films shown in defendants' place of business which had no plot, no real motive and no objectives other than to appeal to the prurient interest in sex were uncontrovertibly obscene and exhibition of such films was not protected by the First and Fourteenth Amendments; therefore, the trial court did not err in submitting the case to the jury in an action under G.S. 14-190.1.

6. Criminal Law § 170— improper jury argument — objection properly sustained

The trial court did not err in sustaining the solicitor's objection to defense counsel's argument to the jury that "(t)hese men have done everything they can to avoid offending people" where there was no evidence in the record to support such argument.

**7. Criminal Law § 161— assignment of error not in record on appeal**

An assignment of error not a part of the record on appeal but argued by both the defendants and the State in the briefs will not be considered by the court on appeal.

APPEAL by defendants from *Friday, Judge,* 6 March 1972 Session of Superior Court for the trial of criminal cases held in MECKLENBURG County.

The "Complaint for Arrest" or affidavit portion of the warrant against Joe Bryant (Bryant) reads as follows:

"The undersigned, G. C. Hager, being duly sworn, complains and says that at and in the County named above and on or about the 10th day of September, 1971, the defendant named above did unlawfully, willfully, and did intentionally disseminate obscenity in a public place, to wit: The Adult Book Center, 407 North Tryon Street, Charlotte, N. C., in that he did provide obscene 8mm motion picture, did exhibit and make available 8mm motion pictures, and did rent and sell and provide obscene motion picture 8mm film which with the representation, embodiment, performance and publication of the obscene, and that the said 8mm motion picture film did show actual acts of sexual intercourse, fellatio and cunnilingus performed by and between human males and human females.

The offense charged here was committed against the peace and dignity of the State and in violation of law G.S. 14-190.1."

The "Complaint for Arrest" or affidavit portion of the warrant against Raymond Mitchell Floyd (Floyd) is identical to that against Bryant with the exception that instead of the word "provide" appearing as the fifth word after the words "Charlotte, N. C." there appears the word "allow" as the fifth word after the words "Charlotte, N. C."

The defendants were tried in the district court on these warrants, found guilty, and sentenced. From the sentence imposed, they both appealed to the superior court where the cases were consolidated without objection, and the defendants were tried *de novo.*

The evidence for the State tended to show that on 10 September 1971 Floyd was the owner of the business operated at

407 North Tryon Street in Charlotte which was open for business under the name of The Adult Book Center, and Bryant was his employee. The Adult Book Center was open to the public but had a sign on the window reading, "No one under the age of 18 years allowed." Inside the door there was a large plastic-faced sign on the floor reading, "Adult Book Store." "Nude Movies in Color." On that date in the two small rooms in The Adult Book Center, there were seven machines which were designed and used for showing eight millimeter moving pictures. On the front of these machines there were color photographs of nude human males and females. The film in these machines could be viewed by the insertion of a twenty-five cent piece which thereupon permitted the viewer to see approximately one-eighth of the film. To see the entire film, eight twenty-five cent pieces were required. On 10 September 1971 two police officers of the City of Charlotte went to The Adult Book Center and entered through the open door. One of the police officers obtained ten dollars worth of twenty-five cent pieces from Bryant who was behind the counter and thereupon the two officers went into the viewing rooms and viewed films in four of the machines. After viewing the films in these machines, the officers identified themselves to Bryant and then to Floyd who arrived a short time thereafter. These four films were introduced in evidence as State's Exhibits 2, 3, 4 and 5 and were shown to the jury and to the State's and defendant's witnesses in the courtroom. The parties stipulated that "the films exhibited in the courtroom, State's Exhibits 2, 3, 4 and 5, were 8 millimeter color motion pictures, films, without sound, with no captions or titles except in one film there was a sign, 'Hundred Dollar Call Girl,' near the front of the movie, and in two of the exhibits there was a 'The End.' And it is further stipulated that these films showed acts of sexual intercourse and oral sexual acts by and between human males and human females in a state of undress."

The State's evidence further tended to show that the dominant theme of the four films appealed to a prurient interest in sex; that they were offensive because they affronted contemporary national community standards relating to the description or representation of sexual matters; that they were utterly without redeeming social value; and that they were not protected or privileged under the Constitution of the United States or the Constitution of North Carolina.

The defendants offered evidence which tended to show that the dominant theme of the four films did not appeal to a prurient interest in sex; that they did not affront contemporary national community standards relating to the description or representation of sexual matters; that they did have a social value in that they were entertaining and educational; and that they were protected and privileged under the Constitution of the United States and the Constitution of North Carolina.

There was a verdict of guilty, and from the sentence imposed, the defendants appealed to the Court of Appeals, assigning error.

*Attorney General Morgan and Assistant Attorney General Mitchell for the State.*

*Smith, Patterson, Follin & Curtis by Norman B. Smith, Michael K. Curtis and J. David James for defendant appellants.*

MALLARD, Chief Judge.

[1] Defendants' first assignment of error is to the failure of the court to allow their motions to quash the warrant as to each defendant on the grounds that the warrant was defective in that it failed to state a crime and failed to adequately describe the films involved so as to distinguish them from other items in their class.

The pertinent parts of G.S. 14-190.1, the statute under which the defendants were charged, read as follows:

"(a) It shall be unlawful for any person, firm or corporation to intentionally disseminate obscenity in any public place. A person, firm or corporation disseminates obscenity within the meaning of this Article if he or it:

*      *      *

(3) Publishes, exhibits or otherwise makes available anything obscene; or

(4) Exhibits, broadcasts, televises, presents, rents, sells, delivers, or provides; or offers or agrees to exhibit, broadcast, televise, present, rent or to provide; any obscene still or motion picture, film, filmstrip, or projection slide, or sound recording, sound tape, or sound track, or any matter or material of whatever form which is a representation, embodiment, performance, or publication of the obscene.

(b) For purposes of this Article any material is obscene if:

(1) The dominant theme of the material taken as a whole appeals to the prurient interest in sex; and,

(2) The material is patently offensive because it affronts contemporary national community standards relating to the description or representation of sexual matters; and,

(3) The material is utterly without redeeming social value; and,

(4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina."

This statute was enacted by the General Assembly of North Carolina at the 1971 Session, to be effective 1 July 1971.

In support of their contentions that the warrants were defective, the defendants cite *State v. Barnes,* 253 N.C. 711, 117 S.E. 2d 849 (1961), in which a warrant attempting to charge the dissemination of obscenity under a statute, now repealed, was held to be void because of an insufficient description of the obscene material. The warrants in this case are distinguishable from those in the Barnes case in that here, the warrants describe the specific sexual acts contained in the 8 millimeter motion pictures alleged to be obscene in violation of G.S. 14-190.1. We hold that the obscene materials were sufficiently described in the warrants in these two cases and that the court properly denied the motion to quash.

[2, 3] Defendants' second assignment of error is that the statute, G.S. 14-190.1, is unconstitutional and that the warrants should have been quashed for that reason. In *A Book v. Attorney General,* 383 U.S. 413, 16 L.Ed. 2d 1, 86 S.Ct. 975 (1966), which is sometimes referred to as the "Fanny Hill" case, Mr. Justice Brennan announced the judgment of the Court and said:

"We defined obscenity in Roth in the following terms: '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' 354 US, at 489, 1 L ed 2d at 1509. Under this definition, as elaborated

in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

Our statute, G.S. 14-190.1, contains all of the elements set forth as essential in the "Fanny Hill" case and, in addition, requires that literature and exhibitions proscribed therein must affront not just "contemporary community standards" but that it must be offensive because it affronts contemporary *national* community standards. Defendants argue that the statute is impermissibility vague and overbroad and omits any requirement of knowledge. We hold that any citizen who desires to obey the law will have no difficulty in understanding the conduct proscribed by this statute. The dissemination of obscenity is not protected by the Constitutions; thus, this statute by its terms does not infringe upon the rights to disseminate protected material. In the statute it is required that one must "intentionally disseminate obscenity." We hold that therefore this statute does require a finding of intent and guilty knowledge before a defendant may be convicted thereunder. We reject defendants' contention that the statute is vague, overbroad, or does not require an intent and guilty knowledge. We hold that the statute is not unconstitutional and that the trial judge correctly denied the motion of the defendants to quash the warrants.

[4] Defendants' third assignment of error is that the trial judge committed prejudicial error in overruling defendants' objections to questions directed at eliciting opinions from witnesses who were not qualified as experts.

One of the State's witnesses who gave his opinion was a writer for the Charlotte News. He was offered by the State and found by the court, without objection, to be an expert in the field of movie criticism. However, four other State's witnesses also gave their opinions on the issue of obscenity. G.S. 14-190.1(c) specifically authorizes expert testimony relating to factors entering into the determination of the issue of obscenity but does not limit the testimony to experts.

In G.S. 14-190.1(c), it is also provided that evidence shall be admissible to show:

"(4) What the predominant appeal of the material would be for ordinary adults or a special audience, and what effect, if any, it would probably have on the behavior of such people;

(5) Artistic, literary, scientific, educational or other social value, if any, of the material;

(6) The degree of public acceptance of the material throughout the United States;

(7) Appeal to prurient interest, or absence thereof, in advertising or in the promotion of the material."

In *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969), the Supreme Court said:

"In the absence of a request by the appellant for a finding by the trial court as to the qualification of a witness as an expert, it is not essential that the record show an express finding on this matter, the finding, one way or the other, being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness. * * *"

In the present case the appellants did not request a finding as to whether the other four State's witnesses (in addition to the one held to be an expert) who gave their opinions were experts. Moreover, there was ample evidence in the record upon which to base a finding that each of the State's witnesses who were permitted to give their opinion was an expert (by education, or travel, or experience, or all combined) in the area of life relating to factors entering into the determination of the issue of obscenity. See *United States v. Wild,* 422 F. 2d 34 (2d Cir. 1969), *cert. denied,* 402 U.S. 986, *reh. denied,* 403 U.S. 940. It was not essential that the record show an express finding that they were expert witnesses. *State v. Perry, supra;* and *State v. Tessenar,* 15 N.C. App. 424, 190 S.E. 2d 313 (1972). The defendants' third assignment of error is without merit. See also 3 Strong, N. C. Index 2d, Evidence, § 48; and Stansbury, N. C. Evidence 2d, § 133.

[5]  The defendants' fourth assignment of error is that the trial judge committed prejudicial and reversible error in failing to allow their motion for judgment of nonsuit on the grounds that the material involved, in view of the circumstances of its distribution, was protected under the First and Fourteenth

State v. Bryant and State v. Floyd

Amendments to the United States Constitution, and that the State failed to prove knowledge on the part of the defendants.

In *United States v. Wild, supra,* color slides presenting a nude male, seated or lying facing the camera, holding or touching his erect penis, and slides depicting two nude males in the act of fellatio were held to be hard core pornography. In so holding, the Court said:

> "We do not believe, as appellants in effect urge, that the Constitution requires the Government to produce expert testimony about appeal to the prurient interest and contemporary community standards in every obscenity case. * * *
>
> We hold that in cases such as this the trier of fact needs no expert advice. * * * Simply stated, hard core pornography such as this can and does speak for itself.
>
>            *      *      *
>
> '* * * These are stark, unretouched photographs —no text, no possible avoidance of *scienter,* no suggested proper purpose, no conceivable community standard which would permit the indiscriminate dissemination of the material, no alleviating artistic overtones. These exhibits reflect a morbid interest in the nude, beyond any customary limit of candor. They are "utterly without redeeming social importance." * * *
>
> We think that photographs can be so obscene—it is conceivably possible that they be so obscene—that the fact is uncontrovertible. These photographs are such. * * *' "

In the case before us it was stipulated that the films "showed acts of sexual intercourse and oral sexual acts by and between human males and human females in a state of undress." The films identified as State's Exhibits 2, 3, 4 and 5 introduced into evidence in this case depicted sexual activity in what is customarily thought of as the normal manner by the insertion of the human penis into the vagina of the human female. In addition, they depicted sexual activity by oral stimulation of the penis with the mouth of a nude female, and also sexual activity by the stimulation of the vulva and clitoris with the lips and tongue of a nude male. There were depictions of

simultaneous acts of fellatio and cunnilingus between a nude male and a nude female. There were also depictions where the act of cunnilingus was performed by one nude male with a nude female while another nude female was engaged simultaneously with the same nude male in the act of fellatio. These depictions were not all simulated and little, if anything, was left to the imagination. The sole emphasis of these films is the revealing of the sexual activity of the moment. They have no plot, no real motive, and no objectives other than to appeal to the prurient interest in sex. We hold that these films are uncontrovertibly obscene.

We reject the defendants' contention that such exhibitions in the place of business described here are protected by the First and Fourteenth Amendments. See *A Book v. Attorney General, supra.* We reject the contentions of the defendants that these films have entertainment as well as educational value. The fact that perhaps adults were the only ones who viewed these films did not rob them of their salacious character. We hold that there was ample evidence, circumstantial in part and direct in part, to show knowledge on the part of both defendants of the contents of these films.

We also reject defendants' contention that this court should hold that these films have educational as well as entertainment value because some other publications, exhibitions, or material (some of which may be of ancient origin) have vivid descriptions of various obscene acts in them. The obscenity revealed in the films in this case does not lose its lewd, lascivious and salacious character simply because it is not the only source thereof.

The trial judge did not commit error in submitting the case to the jury and the defendants' fourth assignment of error is overruled.

[6] Defendants' assignment of error numbered 6 is that the trial judge committed error in sustaining the objection of the solicitor to a portion of the argument to the jury of counsel for the appellants.

In the record the following appears:

"During the defendants' argument, defendants' counsel argued: 'These men have done everything they can to

avoid offending people. The front of the store is painted over. . . ' At this point in the argument the solicitor objected on the ground that the defendants had not taken the stand, and the objection was sustained by the court."

The precise wording of the solicitor's objection is not given. The record does not reveal precisely what the solicitor *stated* as his grounds in the presence and hearing of the jury. It was improper for the defendants' counsel to argue, when there was no evidence to support it, that "(t)hese men have done everything they can to avoid offending people." It would be improper for the solicitor to argue to the jury that the defendants had not testified. The record, however, does not reveal that the solicitor argued to the jury the fact that the defendants had not testified. It was not error for the solicitor to object to the improper argument of counsel. See *Knowles v. United States,* 224 F. 2d 168 (10th Cir. 1955). If the solicitor did state in the presence and hearing of the jury that his grounds for objecting to the improper argument of defendants' attorney was that they had not taken the witness stand, and if it be conceded, which we do not, that it was error, it was invited by the improper argument of the attorney for the defendants and they cannot complain. See *State v. Payne,* 280 N.C. 170, 185 S.E. 2d 101 (1971). Moreover, the trial judge instructed the jury that they were not to allow the fact that the defendants did not testify to influence their decision in any way. There was no objection to this instruction given by the trial judge, and if the solicitor's objection constituted error, it was cured by the instructions of the judge. See *State v. Bumpers,* 270 N.C. 521, 155 S.E. 2d 173 (1967), *rev'd. on other grounds,* 391 U.S. 543, 20 L.Ed. 2d 797, 88 S.Ct. 1788; *State v. Stephens,* 262 N.C. 45, 136 S.E. 2d 209 (1965). The defendants' assignment of error numbered 6 is overruled.

The jury of twelve, from all walks of life, after viewing the films and hearing the evidence, under proper instructions from the court, found that the dominant theme of the material in the films introduced into evidence in this case appeals to the prurient interest in sex, that they are patently offensive because they are an affront to contemporary national community standards relating to the description or representation of sexual matters, that they are utterly without redeeming social value, and that the material as used is not protected or privi-

---

---

leged under the Federal or State Constitutions. After viewing the films [see *Jacobellis v. Ohio*, 378 U.S. 184, 12 L.Ed. 2d 793, 84 S.Ct. 1676 (1964)] and considering the evidence offered by the parties, we concur in each of the findings by the jury.

[7]    The record on appeal in this case was filed in this court on 19 June 1972. On 9 August 1972 defendants' counsel, the solicitor and the Attorney General stipulated that assignment of error numbered 4 appearing in the record on appeal should be corrected as set forth in the stipulation. On 10 August 1972 this correction was allowed. Thereafter on 6 October 1972, in an *ex parte* motion the defendants moved to insert material into the record on appeal and to be permitted to add an assignment of error numbered 10 based on the material thus inserted. That motion was denied by this court on 10 October 1972. Both the defendants and the State ignored the denial of that proposed addendum by this court and argued that so-called assignment of error in the briefs. Inasmuch as that assignment of error is not a part of the record on appeal, it is not considered.

We have considered all of the defendants' assignments of error properly presented and find no prejudicial error.

In the trial we find no prejudicial error.

No error.

Judges BROCK and BRITT concur.