STATE OF NORTH CAROLINA v. DILLARD P. HART AND DREWRY HALL

No. 49

(Filed 14 April 1975)

**1. Statutes §§ 7, 10— amendment of criminal statute pending appeal — effect**

Where an amendment of a criminal statute does not reduce the punishment or otherwise remove any burden imposed on defendants by prior law, appellate courts will not give effect to such change in the law pending an appeal if the subsequent legislation (1) contains a savings clause or (2) manifests a legislative intent to the contrary, or (3) where there is a constitutional prohibition.

**2. Statutes § 5— construction — legislative intent**

In the interpretation of statutes the legislative will is the controlling factor.

**3. Statutes § 5— construction — object of statute**

A construction of a statute which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language.

4. **Obscenity; Statutes § 10—dissemination of obscenity — amendment changing definition of obscenity — conviction under old statute**

   Since the definition of "obscenity" in the former statute under which defendants were charged with dissemination of obscenity placed a heavier burden on the State to convict than the definition prescribed in the amendment to G.S. 14-190.1 *et seq.* by Chapter 1434 of the 1973 Session Laws, the amendment affords defendants no grounds on which to contend that their convictions under the former statutes are now illegal and must abate.

5. **Obscenity; Statutes § 10— dissemination of obscenity — adversary determination of obscenity — nonretroactivity**

   The legislature intended that Chapter 1434 of the 1973 Session Laws, including the amendment to G.S. 14-190.2(h) prohibiting an arrest or indictment for a violation of G.S. 14-190.1 *et seq.* until the material involved has been declared obscene in an adversary proceeding and the material thereafter disseminated, should become effective 1 July 1974 and should be applied prospectively only; therefore, the amendment, which became effective during the pendency of defendants' appeal, did not inure to their benefit and abate the charges against them.

6. **Obscenity; Constitutional Law § 35—dissemination of obscenity — change in definition of "sexual conduct" — dual tests — ex post facto laws**

   The insertion in G.S. 14-190.1 of a definition of "sexual conduct" conforming to the holding of *Miller v. California*, 413 U.S. 15, by the enactment of Chapter 1434 of the 1973 Session Laws, after the date of defendants' arrest for dissemination of obscenity, did not deny them due process or amount to an *ex post facto* application of the law when that definition is applied to them since a determination of whether pre-*Miller* material is obscene is made by testing the material under both *Miller* and the old test set forth in *Memoirs v. Massachusetts*, 383 U.S. 413.

ON *certiorari* to the Court of Appeals to review its decision, 22 N.C. App. 738, 207 S.E. 2d 766 (1974), arresting judgments pronounced by *Clark, J.*, 21 January 1974 Session, ALAMANCE Superior Court.

Defendants were charged in separate warrants with the unlawful and willful dissemination of obscene materials in violation of G.S. 14-190.1(a). Defendant Hall was arrested on 18 December 1972, and defendant Hart on 1 February 1973.

Defendants were found guilty in district court and appealed to the Superior Court of Alamance County for trial *de novo*.

On 28 January 1974 both defendants moved for dismissal on the ground that G.S. 14-190.1(a) had not been construed by the appellate courts of this State in accordance with the law

laid down in *Miller v. California*, 413 U.S. 15, 37 L.Ed. 2d 419, 93 S.Ct: 2607 (decided 21 June 1973). Both motions were denied, and each defendant thereupon pleaded guilty "assuming that the statute is valid and constitutional." After determining by a pre-sentence inquiry and adjudication that defendants had freely, understandingly and voluntarily pled guilty, Judge Clark sentenced each defendant to six months in prison, suspended for two years upon the following conditions, "to which the defendant gave assent: pay a fine of $500.00 and the costs. That he not violate the statutes of this state relating to the sale or distributing under G.S. 14-190.1. He is not to engage or become employed in business of distributing obscene materials."

Each defendant appealed to the Court of Appeals, and that court treated the appeal as a petition for certiorari and granted the writ.

On 13 April 1974 the General Assembly ratified Chapter 1434, 1973 Session Laws, revising and rewriting the anti-obscenity statutes of North Carolina, *effective July 1, 1974*. Section 5 of Chapter 1434 provides that no person, firm or corporation shall be arrested or indicted for any violation of G.S. 14-190.1 et seq., "until the material involved has first been the subject of an adversary determination under the provisions of this section, wherein such person, firm or corporation is a respondent, and wherein such material has been declared by the court to be obscene . . . and until such person, firm or corporation continues, subsequent to such determination, to engage in the conduct prohibited . . . . "

The Court of Appeals, concluding that Chapter 1434 of the 1973 Session Laws contained no savings clause or other provision manifesting legislative intent that it should be applied prospectively only, held that defendants were entitled to the benefit of the adversary hearing provisions above quoted. Since defendants had not received such a hearing before these warrants were issued, that court concluded that the criminal actions against these defendants had abated. We allowed the State's petition for certiorari to review that decision.

*James H. Carson, Jr., Attorney General; Edwin M. Speas, Jr., Assistant Attorney General; Richard F. Kane, Associate Attorney, for the State of North Carolina, appellant.*

*Harriss, Ruis & Mulligan by Ronald H. Ruis, Attorney for defendant appellees.*

HUSKINS, Justice.

Prior to the enactment of Chapter 1434 of the 1973 Session Laws, G.S. 14-190.2(h) (1973 Cum. Supp.) provided in pertinent part:

> "Nothing in this section shall be construed as preventing any law-enforcement officer from arresting any person when that person is charged under a proper warrant or indictment with a criminal violation of this Article. . . . "

Chapter 1434 of the 1973 Session Laws, *effective July 1, 1974,* rewrote G.S. 14-190.2(h) to read as follows:

> "No person, firm or corporation shall be arrested or indicted for any violation of a provision of G.S. 14-190.1, G.S. 14-190.3, G.S. 14-190.4, G.S. 14-190.5, G.S. 14-190.6, G.S. 14-190.7, G.S. 14-190.8, G.S. 14-190.10, or G.S. 14-190.11 until the material involved has first been the subject of an adversary determination under the provisions of this section, wherein such person, firm or corporation is a respondent, and wherein such material has been declared by the court to be obscene or in the case of G.S. 14-190.10 or G.S. 14-190.11, to be sexually oriented and until such person, firm or corporation continues, subsequent to such determination, to engage in the conduct prohibited by a provision of the sections hereinabove set forth."

It thus appears that at the time these defendants were arrested G.S. 14-190.2(h) contained no provision prohibiting the arrest or indictment of an alleged violator of G.S. 14-190.1 et seq. until the material involved had first been the subject of an adversary determination and declared by the court to be obscene. That provision became the law on July 1, 1974—after defendants had been arrested, tried, and sentenced, but during the pendency of their appeals. We are thus confronted with the question whether the amendment to G.S. 14-190.2(h), effective July 1, 1974, during the pendency of this appeal, inures to the benefit of defendants and abates this prosecution.

[1] We note at the outset that the 1973 amendment to G.S. 14-190.2(h) does not *reduce* the punishment or otherwise *remove any burden* imposed upon these defendants by prior law. To the contrary, that amendment places an additional procedural burden upon the State to obtain an adversary judicial determination that the material in question is obscene, and thereafter dissemi-

nated by the accused, before he may be arrested or indicted. And no other provision of Chapter 1434 of the 1973 Session Laws reduces the punishment or otherwise removes any burden imposed on an accused by the law in effect prior to July 1, 1974. In that setting, appellate courts will not give effect to such changes in the law pending an appeal if the subsequent legislation (1) contains a savings clause or (2) manifests a legislative intent to the contrary, or (3) where there is a constitutional prohibition. *State v. Currie,* 284 N.C. 562, 202 S.E. 2d 153 (1974) ; *State v. Cameron,* 284 N.C. 165, 200 S.E. 2d 186 (1973), *cert. denied* 418 U.S. 905, 41 L.Ed. 2d 1153, 94 S.Ct. 3195 (1974) ; *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972) ; *State v. Pardon,* 272 N.C. 72, 157 S.E. 2d 698 (1967).

Chapter 1434 of the 1973 Session Laws contains no savings clause; and we are aware of no constitutional prohibition which prevents giving retroactive effect to the changes wrought by the enactment of that chapter. In our view, however, there is in Chapter 1434 a *manifest legislative intent* that said chapter should be applied prospectively only and should not be applicable to pending prosecutions.

[2, 3] In the interpretation of statutes the legislative will is the controlling factor. "Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law." 73 Am. Jur. 2d, Statutes § 145 (1974). A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language. *Ballard v. Charlotte,* 235 N.C. 484, 70 S.E. 2d 575 (1952). Where possible, the language of a statute will be interpreted so as to avoid an absurd consequence. *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1 (1966) ; *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797 (1948) ; *State v. Scales,* 172 N.C. 915, 90 S.E. 439 (1916) ; *State v. Earnhardt,* 170 N.C. 725, 86 S.E. 960 (1915).

"Of course criminal statutes must be strictly construed. [Citations omitted.] But this does not mean that a criminal statute should be construed stintingly or narrowly. It means that the scope of a penal statute may not be extended by implication beyond the meaning of its language so as to include offenses not clearly described. [Citations omitted.] Even so, an interpretation which leads to a strained construction or to a ridiculous result is not required and will not be adopted. *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596 [1968]. 'While a criminal statute

State v. Hart

---

must be strictly construed, the courts must nevertheless construe it with regard to the evil which it is intended to suppress. And the rule that statutes will be construed to effectuate the legislative intent applies also to criminal statutes.' 7 Strong's N. C. Index 2d, Statutes § 10; *State v. Brown,* 221 N.C. 301, 20 S.E. 2d 286 [1942]; *State v. Hatcher,* 210 N.C. 55, 185 S.E. 435 [1936]; *State v. Humphries,* 210 N.C. 406, 186 S.E. 473 [1936]." *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765 (1970).

When Chapter 1434 of the 1973 Session Laws is subjected to these rules of construction, it is manifest that the legislature intended the changes wrought by that enactment to be prospective only beginning July 1, 1974. Chapter 1434 amended G.S. 14-190.1 et seq. by (1) changing the definition of "obscenity" fashioned in *Roth v. United States,* 354 U.S. 476, 1 L.Ed. 2d 1498, 77 S.Ct. 1304 (1957), and *Memoirs v. Massachusetts,* 383 U.S. 413, 16 L.Ed. 2d 1, 86 S.Ct. 975 (1966), to conform to the new definition of obscenity contained in *Miller v. California,* 413 U.S. 15, 37 L.Ed. 2d 419, 93 S.Ct. 2607 (1973), (2) defining "sexual conduct" to conform to the holding in *Miller,* and (3) amending former G.S. 14-190.2 (h) to prohibit the arrest or indictment of any person, firm or corporation for a violation of G.S. 14-190.1 et seq. until the material involved had been declared obscene in an adversary proceeding and the material thereafter disseminated.

The foregoing changes did not repeal the former anti-obscenity statutes but only amended them effective July 1, 1974. "As a general rule, except in so far as an amendment may operate as an implied repeal of a statute . . . , the amendment of a criminal statute does not affect the prosecution or punishment of a crime committed before the amendment becomes effective, but as to such crimes the original statute remains in force." 22 C.J.S., Criminal Law § 26 at 87 (1961).

[4]  It appears that the definition of "obscenity" in our former statute under which these defendants are charged placed a heavier burden on the State to convict than the definition prescribed in *Miller v. California, supra.* Since the latest amendment to G.S. 14-190.1 through G.S. 14-190.11 (a codification of Chapter 1434 of the 1973 Session Laws) makes it easier for the State to convict violators, the amendment affords these defendants no grounds on which to contend that their convictions are now illegal and must abate.

[5]  Further, we note that although Chapter 1434 of the 1973 Session Laws was ratified on April 13, 1974, the General Assembly specifically provided that the act become effective July 1, 1974. This clearly demonstrates the manifest intent of the General Assembly that Chapter 1434 should not be applied retroactively. Otherwise, we have an obviously absurd result: An act ratified on April 13, 1974 with its effective date postponed until July 1, 1974, and yet to be retroactively applied to all prior pending prosecutions! To further confound the hiatus, such an interpretation and application of Chapter 1434 would mean, *in effect,* that the State had no anti-obscenity statutes from April 13, 1974 through June 30, 1974, because prosecutions initiated during that period would not have become final before July 1, 1974, on which date all pending prosecutions would have to be abandoned. Such a result could not have been intended by the General Assembly and we will not adopt an interpretation which produces a result so obviously ridiculous. We hold that the Legislature manifestly intended that Chapter 1434 of the 1973 Session Laws should become effective on July 1, 1974, and should be applied prospectively only. It necessarily follows that the charges against these defendants were not abated by the enactment of Chapter 1434 of the 1973 Session Laws.

[6]  Defendants next contend that insertion of a definition of "sexual conduct" into G.S. 14-190.1 by enactment of Chapter 1434 of the 1973 Session Laws, after the date of their arrest, denies them due process and amounts to an *ex post facto* application of the law when that definition is applied to them. This contention has no merit. It was advanced and rejected in *United States v. Thevis,* 484 F. 2d 1149 (5th Cir. 1973), and by this Court in *State v. Bryant and Floyd,* 285 N.C. 27, 203 S.E. 2d 27, *cert. denied* ___ U.S. ___, 42 L.Ed. 2d 188, 95 S.Ct. 238 (1974).

*State v. Bryant and Floyd,* 16 N.C. App. 456, 192 S.E. 2d 693 (1972), *remanded* 413 U.S. 913, 37 L.Ed. 2d 1036, 93 S.Ct. 3065 (1973), was remanded by the Supreme Court of the United States to the North Carolina Court of Appeals for further consideration in light of *Miller v. California, supra.* The Court of Appeals reconsidered the constitutionality of G.S. 14-190.1 as applied to the defendants in light of *Miller,* made an independent judgment on the facts and considered both the *Miller* and *Memoirs* definitions of obscenity. After applying the "dual standards test" of both *Miller* and *Memoirs,* the Court of Ap-

State v. Hart

peals concluded that the film in question was obscene under *both* standards and again held that G.S. 14-190.1 was not unconstitutional on its face and not unconstitutional as applied to defendants. 20 N.C. App. 223, 201 S.E. 2d 211 (1973). On appeal to this Court, we affirmed. *State v. Bryant and Floyd,* 285 N.C. 27, 203 S.E. 2d 27, *cert. denied* _____ U.S. _____, 42 L.Ed. 2d 188, 95 S.Ct. 238 (1974).

The dual test was designed to protect, and does protect, defendants from any *ex post facto* application of the law. Whether pre-*Miller* material is obscene is determined by testing the material under both *Memoirs* and *Miller*. "This procedure avoids an *ex post facto* application of *Miller* and keeps *Memoirs* intact for the purposes of judging offenses committed prior to the Supreme Court decision in *Miller*. Unless the material is judged to be obscene under both *Memoirs* and *Miller* there can be no conviction." *United States v. Millican,* 487 F. 2d 331 (5th Cir. 1973), *cert. denied,* 418 U.S. 947, 41 L.Ed. 2d 1177, 94 S.Ct. 3233 (1974) ; *accord, State ex rel. Chobot v. Circuit Court for Milwaukee,* 61 Wis. 2d 354, 212 N.W. 2d 690 (1973).

Decision here is controlled by *State v. Bryant and Floyd, supra.* Defendants' voluntary pleas of guilty remove the necessity of proof by the State and present for review "only whether the indictment [warrant] charges an offense punishable under the Constitution and law." *State v. Wynn,* 278 N.C. 513, 180 S.E. 2d 135 (1971). Even so, an examination of the materials disseminated by defendants discloses hard-core pornographic publications which are obscene under both *Memoirs* and *Miller* definitions of obscenity. Therefore, since the warrants charge an offense under a constitutional statute, the verdicts and judgments must be upheld.

For the reasons stated, the decision of the Court of Appeals is reversed and the case remanded to that court for further remand to the Superior Court of Alamance County to the end that the judgments pronounced by Judge Clark upon defendants' voluntary pleas of guilty may be reinstated.

Reversed and remanded.