STATE OF NORTH CAROLINA v. JEFF MAYES

No. 8627SC1346

(Filed 18 August 1987)

**1. Obscenity § 2— dissemination of obscenity—"community" not defined—statute not unconstitutional**

Neither N.C.G.S. § 14-190.1, the statute prohibiting dissemination of obscenity, nor the trial judge's instructions contravened the U. S. Constitution by failing to specify what was meant by the "community" whose standards should be used in determining whether the material in question was obscene.

**2. Obscenity § 2— dissemination of obscenity—no uniform statewide standard of obscenity**

Permitting jurors to apply the standards of the community from which they came, rather than requiring the application of a uniform statewide standard of obscenity, does not violate the equal protection clause of the N. C. Constitution. Art. I, § 19 of the N. C. Constitution.

**3. Obscenity § 3— dissemination of obscenity—exclusion of testimony—no error**

In a prosecution of defendant for intentional dissemination of obscenity, the trial court did not err in excluding: (1) testimony by a witness concerning results of a statewide survey he conducted for the defense, since the testimony excluded had no relevance to what the community considered obscene; (2) testimony by a speech communications professor as to whether the materials at issue were obscene, since the questions put to the witness were not premised upon his knowledge of contemporary community standards; and (3) testimony by a private investigator as to the availability of similar material in the community, since availability means nothing more than that other people are engaged in similar activities and is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance.

**4. Obscenity § 3— dissemination of obscenity—guilty knowledge—sufficiency of evidence**

In a prosecution of defendant for intentional dissemination of obscenity, evidence of defendant's guilty knowledge was sufficient to be submitted to the jury where there was evidence that defendant told a plainclothes law enforcement officer that the materials for sale in the bookstore were illegal, and there was testimony tending to show that defendant was the store manager.

**5. Obscenity § 3— dissemination of obscenity—intent and guilty knowledge—instructions proper**

In a prosecution of defendant for intentional dissemination of obscenity, the trial court properly instructed the jury on the issue of defendant's intent and guilty knowledge where the court instructed the jurors that, to convict defendant, they must find beyond a reasonable doubt that he intentionally disseminated material which, when viewed in its entirety, was obscene, and the court further instructed that the State bore the burden of proving beyond

---

**State v. Mayes**

---

a reasonable doubt that defendant "knew the content, character and nature of the magazines as a whole which he sold. . . ."

Judge BECTON concurring in part and dissenting in part.

APPEAL by defendant from *Owens, Judge.* Judgment entered 21 August 1986 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 11 June 1987.

Defendant was charged with two counts of intentional dissemination of obscenity in violation of G.S. 14-190.1. At trial, the State presented evidence tending to show that on 1 October 1985, Sergeant Ralph McKinney of the Cleveland County Sheriff's Department went to the Shelby Three Adult Bookstore on Highway 74 west of Shelby in Cleveland County. Sgt. McKinney was dressed in plain clothes. As he approached the door of the bookstore, he was met by defendant, who asked Sgt. McKinney if he was a "cop." Sgt. McKinney responded by asking "if I looked like a cop." Defendant remarked that he had been expecting the police all day. Sgt. McKinney asked, "You mean this stuff is illegal now?" Defendant responded, "Under the new law, it is."

Sgt. McKinney followed defendant into the bookstore and then browsed for about twenty minutes. He selected two magazines, took them to the cash register, and placed them upon the counter. Defendant rang up the sale and Sgt. McKinney paid him for the magazines.

The State introduced both magazines into evidence. One magazine, entitled "Express — The Pursuit of Pleasure," contains erotic stories, reviews of various erotic magazines and video tapes, interviews, advertisements, and many graphic and explicit photographs of nude and partially clad men and women engaged in various sexual acts, including vaginal intercourse, anal intercourse, fellatio, cunnilingus, masturbation, group sex and bondage. The other magazine, entitled "Cockscrew," consists solely of graphic and explicit photographs of two males, sometimes nude and sometimes partially clad, engaging in fellatio, anal intercourse, and masturbation, with a tenuous and scant storyline running throughout.

Defendant did not testify. Dr. Charles Winick, a psychologist called as a defense witness, testified that, in his opinion, the magazines appealed to a normal interest in sex, rather than a pru-

rient interest, and had serious artistic and scientific merit. Upon the State's objection, the trial court excluded the testimony of a private investigator as to the availability of similar materials in Cleveland County and adjoining counties, and the testimony of an expert witness in the field of communication as to whether the magazines fell within the statutory definition of obscenity.

Defendant was convicted of both counts by the jury and judgment was entered upon the verdicts. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Steven F. Bryant, for the State.*

*Lipsitz, Green, Fahringer, Roll, Schuller & James, by Stanley J. Sliwa and Herbert L. Greenman; and James, McElroy & Diehl, P.A., by Edward T. Hinson, Jr., for defendant-appellant.*

MARTIN, Judge.

Defendant contends that his convictions must be set aside for several reasons. First of all, he contends that his conviction is constitutionally invalid because the jury was not required to apply a statewide contemporary community standard in determining whether the materials at issue in this case were obscene. He also assigns error to the exclusion of: (1) evidence as to the availability of similar materials in the community; (2) evidence as to the results of a public opinion survey; and (3) expert opinion testimony upon the issue of the obscenity of the materials. In addition, he challenges the sufficiency of the State's evidence, assigns error to portions of the trial court's instructions to the jury, and contests the constitutionality of G.S. 14-190.1 on a number of grounds. For the following reasons, we hold that defendant received a fair trial, free of prejudicial error.

We begin our analysis by stating that which is firmly established: obscene material receives no protection under the First Amendment to the United States Constitution. *Miller v. California,* 413 U.S. 15, 37 L.Ed. 2d 419, 93 S.Ct. 2607, *reh'g denied,* 414 U.S. 881, 38 L.Ed. 2d 128, 94 S.Ct. 26 (1973); *Roth v. United States,* 354 U.S. 476, 1 L.Ed. 2d 1498, 77 S.Ct. 1304, *reh'g denied,* 355 U.S. 852, 2 L.Ed. 2d 60, 78 S.Ct. 8 (1957). "It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth

that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 86 L.Ed. 2d 1031, 1035, 62 S.Ct. 766, 769 (1942). States, therefore, are free to enact criminal statutes prohibiting the dissemination of obscene material, provided that specified guidelines are followed so that protected speech is not also prohibited. *See Miller, supra.*

[1]  By his first assignment of error, defendant contends that G.S. 14-190.1 is constitutionally infirm because it does not require the jury to apply statewide community standards in determining whether materials are obscene. He also contends that his conviction is invalid because the trial court failed to instruct the jury to apply a statewide standard or to define for the jury the relevant community whose standards were to be applied. We reject his contentions.

G.S. 14-190.1(b) provides that material is obscene if:

(1) The material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (c) of this section; and

(2) The average person applying contemporary community standards relating to the depiction or description of sexual matters would find that the material taken as a whole appeals to the prurient interest in sex; and

(3) The material lacks serious literary, artistic, political, or scientific value; and

(4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina.

G.S. 14-190.1(c) defines sexual conduct as:

(1) Vaginal, anal, or oral intercourse, whether actual or simulated, normal or perverted; or

(2) Masturbation, excretory functions, or lewd exhibition of uncovered genitals; or

(3) An act or condition that depicts torture, physical restraint by being fettered or bound, or flagellation of or by a nude person or a person clad in undergarments or in revealing or bizarre costume.

The language used in this statute closely follows the three-pronged test set forth by the United States Supreme Court in *Miller v. California, supra:*

The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, [citations omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 37 L.Ed. 2d at 431, 93 S.Ct. at 2615. As recently as the present term, the Supreme Court has reemphasized that contemporary community standards are to be applied to the first two prongs, while the third prong is to be examined according to the reasonable person standard. *See Pope v. Illinois*, 481 U.S. ---, 95 L.Ed. 2d 439, 107 S.Ct. 1918 (1987).

In *Miller*, the Court held that the use of national standards to determine whether material is obscene is not a constitutional requirement, and that states could properly employ statewide contemporary community standards. *Miller*, however, does not *require* the use of statewide standards. In *Jenkins v. Georgia*, 418 U.S. 153, 41 L.Ed. 2d 642, 94 S.Ct. 2750 (1974), the trial court instructed the jury to apply "community standards" without defining the geographical limits of "community." The Supreme Court approved the instructions, stating that:

*Miller* held that it was constitutionally permissible to permit juries to rely on the understanding of the community from which they came as to contemporary community standards, and the States have considerable latitude in framing statutes under this element of the *Miller* decision. A State may choose to define an obscenity offense in terms of "contemporary community standards" as defined in *Miller* without further specification . . . or it may choose to define the standards in

more precise geographic terms, as was done by California in
*Miller.*

*Id.* at 157, 41 L.Ed. 2d at 648, 94 S.Ct. at 2753. *See also Hamling
v. United States*, 418 U.S. 87, 41 L.Ed. 2d 590, 94 S.Ct. 2887, *reh'g
denied*, 419 U.S. 885, 42 L.Ed. 2d 129, 95 S.Ct. 157 (1974). Our
General Assembly chose not to define "community" in precise
geographic terms when it enacted G.S. 14-190.1. In the absence of
a precise statutory specification of "community," the trial judge
properly declined to judicially restrict or expand that term, per-
mitting the jurors to apply the standards of the community from
which they came in much the same manner as they would deter-
mine "the propensities of a 'reasonable' person in other areas of
the law." *Id.* at 104-105, 41 L.Ed. 2d at 613, 94 S.Ct. at 2901. Ac-
cordingly, we hold that neither G.S. 14-190.1 nor the judge's in-
structions in this case contravene the Constitution of the United
States by failing to specify what is meant by "community."

[2] Defendant argues, however, that the use of a statewide
standard is required by Article I, § 19 of the Constitution of
North Carolina, which provides in part that "[n]o person shall be
taken, imprisoned, or disseized of his freehold, liberties, or
privileges . . . or in any manner deprived of his life, liberty, or
property, but by the law of the land. No person shall be denied
equal protection of the laws. . . ." Defendant argues that use of
any standard smaller than a statewide one is impermissible be-
cause such a standard would make it illegal in some parts of this
State to do that which is legal in other parts of the State.

G.S. 14-190.1 makes it a criminal offense in North Carolina to
disseminate obscenity. This is so throughout the State. It is true
that the application of standards of a community smaller than
statewide may result in the possibility that material considered
obscene in some areas of the State will not be considered obscene
in other areas. This possibility does not, however, render the
statute unconstitutional. In *Miller, supra*, the Supreme Court held
that the federal Constitution does not require materials to be
judged in the light of hypothetical national standards, saying that
it is unrealistic and not constitutionally required that "the people
of Maine or Mississippi accept public depiction of conduct found
tolerable in Las Vegas, or New York City." *Id.* at 32, 37 L.Ed. 2d
at 435, 93 S.Ct. at 2619. In *Hamling, supra*, the Court held that a

juror sitting in obscenity cases is permitted "to draw on knowledge of the community or vicinage from which he comes in deciding what conclusion 'the average person, applying contemporary community standards' would reach in a given case." *Id.* at 105, 41 L.Ed. 2d at 613, 94 S.Ct. at 2901.

> The fact that distributors of allegedly obscene materials may be subjected to varying community standards in the various federal judicial districts into which they transmit the materials does not render a federal statute unconstitutional because of the failure of application of uniform national standards of obscenity.

*Id.* at 106, 41 L.Ed. 2d at 614, 94 S.Ct. at 2902. In *Jenkins, supra,* the Court held that in state obscenity cases, jurors need not be instructed "to apply the standards of a hypothetical statewide community." *Id.* at 157, 41 L.Ed. 2d at 648, 94 S.Ct. at 2753.

We believe that the reasoning of the United States Supreme Court is applicable as well to the "equal protection of the laws" clause of our State Constitution. Ours is a large and diverse State, and it is unrealistic to expect to find that the same standards exist throughout the State or that the residents of one part of the State would have knowledge of the community standards held in another area. Thus we hold that permitting jurors to apply the standards of the community from which they come, rather than requiring the application of a uniform statewide standard of obscenity, does not violate the equal protection clause of the North Carolina Constitution.

[3] Defendant next argues that the trial court erred by preventing the jury from hearing certain proffered evidence. Specifically, defendant assigns error to the exclusion of testimony by Dr. Charles Winick, a psychologist, sex therapist, and public opinion researcher, concerning the results of a statewide survey which he conducted for the defense; the exclusion of opinion testimony by Dr. Terry Cole, a speech communications professor at Appalachian State University, as to whether the materials at issue in this case were obscene; and the exclusion of testimony by private investigator Jan Frankowitz as to the availability of similar material in the community. We hold that the trial court committed no error prejudicial to defendant by excluding the testimony of either expert witness nor of Ms. Frankowitz.

The United States Supreme Court has held that there is no constitutional need for expert testimony that the subject materials are obscene once the materials have been placed in evidence, as the materials themselves are the best evidence of what they represent. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 37 L.Ed. 2d 446, 93 S.Ct. 2628, *reh'g denied*, 414 U.S. 881, 38 L.Ed. 2d 128, 94 S.Ct. 27 (1973). The defense is free, however, to introduce expert testimony as to the obscenity of the materials. *Kaplan v. California*, 413 U.S. 115, 37 L.Ed. 2d 492, 93 S.Ct. 2680, *reh'g denied*, 414 U.S. 883, 38 L.Ed. 2d 131, 94 S.Ct. 28 (1973). While it is established that expert testimony is admissible in obscenity trials, the trial court retains "wide discretion in its determination to admit and exclude evidence, and this is particularly true in the case of expert testimony." *Hamling, supra* at 108, 41 L.Ed. 2d at 615, 94 S.Ct. at 2903. Once the expert witness demonstrates "knowledge, skill, experience, training or education" as required by G.S. 8C-1, Rule 702, "the test of admissibility is helpfulness." Brandis, *North Carolina Evidence* § 132 (Cum. Supp. 1986). As explained in *State v. Knox*, 78 N.C. App. 493, 337 S.E. 2d 154 (1985), "[t]he test for admissibility is whether the jury can receive 'appreciable help' from the expert witness. 7 J. Wigmore, *Evidence* Sec. 1923 at 29 (Chadbourn rev. 1978). Applying this test requires balancing the probative value of the testimony against its potential for prejudice, confusion or undue delay." *Id.* at 495, 337 S.E. 2d at 156.

Defendant first argues that the trial court erred by preventing Dr. Winick from testifying as to results of a survey he conducted in North Carolina. That survey, conducted among 400 adults in 41 counties, contained the following questions pertinent to defendant's argument:

> 2. In your opinion, have standards changed in recent years, so that depictions of nudity and sex are more acceptable or less acceptable in movies, video cassettes, publications, and other materials depicting nudity and sex and available only to adults, but not to children?

> 3. Do you agree or disagree that adults who want to, have the right to obtain and see movies, video cassettes, publications and other materials depicting nudity and sex and which are available only to adults, but not to children?

4. Do you agree or disagree that adults who want to, have the right to patronize and make purchases at bookstores where publications and other materials depicting nudity and sex are available only to adults, but not to children?

5. Do you agree or disagree that adults that want to, have the right to patronize theatres where movies presenting nudity and sex are available only to adults, but not to children?

6. Do you think it is alright or not alright, for adults who wish to do so, to obtain and see in the privacy of their homes, movies, video cassettes, publications and other materials depicting nudity and sex, which are available only to adults and not to children?

7. We have used the words nudity and sex in the preceding questions. What we mean by these words includes exposure of the genitals and every kind of sexual activity, no matter how graphically depicted. Is that what you understood we meant, or did you think we meant something else?

After conducting a *voir dire*, the court permitted Dr. Winick to testify concerning the responses to questions 2 and 7 of the survey but excluded any testimony relating to questions 3 through 6. Defendant argues that this exclusion was improper because it removed from the jury's consideration information which would have been valuable in assisting it in determining community standards. We find no error in the trial court's ruling.

The questions excluded by the court have absolutely no relevance to what the community considers obscene. Questions 3, 4 and 5 are general opinion questions as to what adults "have the right" to obtain and view; they have little, if any, probative value on the issue of whether "the average person applying contemporary community standards" would find that the subject magazines are patently offensive or appeal to the prurient interest in sex. We agree with the analysis of the Georgia Court of Appeals in *Flynt v. State*, 153 Ga. App. 232, 264 S.E. 2d 669, *cert. denied*, 449 U.S. 888, 66 L.Ed. 2d 114, 101 S.Ct. 245 (1980):

One may be of the opinion that adults have the right to obtain and view materials depicting "nudity and sex" although they would themselves regard the material as exceeding the

bounds of "contemporary community standards" and as patently offensive. The survey asked no more than whether the respondents objected to the dissemination of materials depicting nudity and sex to willing adults, not whether they regarded material such as that depicted in appellant's magazines as obscene in themselves.

*Id.* at 233, 264 S.E. 2d at 672.

Similarly, question 6 did not address the issue of the obscenity of any material, but only the question of whether adults had a right to view, in the privacy of their homes, materials depicting nudity and sex. However, G.S. 14-190.1 prohibits only the intentional dissemination of obscenity, not the private possession thereof. The First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. *Stanley v. Georgia,* 394 U.S. 557, 22 L.Ed. 2d 542, 89 S.Ct. 1243 (1969). Therefore, this question has no probative value regarding the question of contemporary community standards, or even regarding the crime with which defendant was charged. We find no abuse of discretion by the trial court in excluding evidence of these survey questions.

Defendant also assigns error to the court's exclusion of expert testimony by Dr. Terry Cole as to whether in his opinion, the magazines in question depict sexual conduct in a patently offensive way, whether they appeal only to a prurient interest, and whether they have serious literary, artistic, political, or scientific value. Defendant's proffer of evidence reveals that Dr. Cole would have testified, in summary, that due to the fact that the magazines were offered for sale at places frequented only by adults who chose to do so, he was of the opinion that the magazines are not patently offensive. He would also have testified that the magazines have scientific value because of their use in speech classes when discussing obscenity, as well as in marriage counseling and sex therapy, and that they have political value because they contribute to the public debate concerning obscenity and sexuality. We hold that the trial judge did not commit reversible error by excluding Dr. Cole's testimony.

The issues before the jury were whether, under contemporary community standards, the magazines are patently offensive and appeal to prurient interest and whether they have literary,

artistic, political, or scientific value. The inquiry put to Dr. Cole with respect to whether or not the material is patently offensive was not premised upon his knowledge of contemporary community standards, and was therefore irrelevant to, and could not have assisted the jurors in deciding, the issues in the case. *See State v. Knox, supra.* Neither the fact that the materials might be used in teaching classes on obscenity and in classroom discussions with respect thereto, nor the fact that the materials are relevant to the public debate on the issue of obscenity establish that the materials have serious scientific or political value. Under such circular reasoning, nothing could ever be found obscene because its value derives from the fact that it may be obscene. Such a result was certainly not intended by the Supreme Court when it established the *Miller* test. We find no error in the exclusion of this testimony.

Dr. Cole also testified on *voir dire* that the materials at issue in this case have scientific value in marriage and sex counseling and do not appeal to a prurient interest in sex. We question whether such testimony is within the expertise of Dr. Cole, who was tendered and admitted as an expert in "speech communication in the context of public communication." However, even assuming that the trial court should have permitted Dr. Cole to state these opinions before the jury, defendant has suffered no prejudice by their exclusion because the same evidence was subsequently placed before the jury through the testimony of Dr. Winick. "[A] litigant is not harmed by the exclusion of testimony, when the same, or substantially the same, testimony is subsequently admitted." *Powell v. Daniel,* 236 N.C. 489, 492, 73 S.E. 2d 143, 145 (1952).

Defendant also assigns error to the trial court's refusal to allow Jan Frankowitz to testify before the jury concerning her purchase of two magazines, described as similar to the materials at issue, from a "Pantry" convenience store in Shelby. Defendant argues that this evidence was probative of, and therefore relevant to, the issue of the "contemporary community standard with respect to patent offensiveness and prurient appeal of sexually explicit materials." We disagree. Availability of similar material alone means nothing more than that other persons are engaged in similar activities. *Hamling, supra; Flynt, supra.* Evidence of mere availability of similar materials is not by itself sufficiently pro-

bative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance. *See United States v. Manarite*, 448 F. 2d 583 (2d Cir.), *cert. denied*, 404 U.S. 947, 30 L.Ed. 2d 264, 92 S.Ct. 298 (1971). Defendant argues that the availability of the magazines bought by Ms. Frankowitz in a neighborhood convenience store indicates community acceptance. On the contrary, this indicates only availability, not acceptance. We find no error in the trial court's exclusion of this evidence.

[4] Defendant next assigns as error the trial court's denial of his motions to dismiss and for judgment notwithstanding the verdict. Citing *Smith v. California*, 361 U.S. 147, 4 L.Ed. 2d 205, 80 S.Ct. 215 (1959), *reh'g denied*, 361 U.S. 950, 4 L.Ed. 2d 383, 80 S.Ct. 399 (1960), defendant accurately argues that dissemination of obscenity cannot be a strict liability crime, and that G.S. 14-190.1(a) requires proof of both intent and guilty knowledge. *See Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 351 S.E. 2d 305 (1986), *aff'd*, 320 N.C. 485, 358 S.E. 2d 383 (1987), *citing State v. Bryant and State v. Floyd*, 16 N.C. App. 456, 192 S.E. 2d 693 (1972), *appeal dismissed and cert. denied*, 282 N.C. 583, 193 S.E. 2d 747, *vacated and remanded*, 413 U.S. 913, 37 L.Ed. 2d 1036, 93 S.Ct. 3065, *reaffirmed*, 20 N.C. App. 223, 201 S.E. 2d 211 (1973), *affirmed*, 285 N.C. 27, 203 S.E. 2d 27, *cert. denied*, 419 U.S. 974, 42 L.Ed. 2d 188, 95 S.Ct. 238 (1974). Defendant's contention that the State presented insufficient evidence to show defendant's guilty knowledge, however, is without merit. At trial, Sgt. McKinney testified that defendant told him that the materials for sale in the bookstore were illegal. In addition, there was testimony tending to show that defendant was the store manager. Treating this evidence in the light most favorable to the State, as we must, *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982), we hold that it is sufficient to permit a reasonable inference that defendant knew the nature and content of the materials he sold to Sgt. McKinney. The evidence was, therefore, sufficient to withstand defendant's motions.

[5] By the same argument in his brief, defendant assigns error to the trial court's instructions to the jury on the issue of defendant's intent and guilty knowledge. Defendant contends that the trial court's denial of numerous requests for jury instructions resulted in a failure by the court to explain to the jury "the ex-

planatory and guiding principles needed to properly apply the complex principles of law involved to the facts of this case." We disagree.

A judge's charge to the jury is sufficient when it fully instructs the jury on all substantive areas of the case and adequately defines and applies the law thereto. *State v. McNeil*, 47 N.C. App. 30, 266 S.E. 2d 824, *cert. denied and appeal dismissed*, 301 N.C. 102, 273 S.E. 2d 306 (1980), *cert. denied*, 450 U.S. 915, 67 L.Ed. 2d 339, 101 S.Ct. 1356 (1981). Although a judge is required to give such instructions as may be specifically requested, when correct and supported by the evidence, the instructions need not be in the exact language requested; it is sufficient if the court gives the instructions in substance. *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976); *State v. Travatello*, 24 N.C. App. 511, 211 S.E. 2d 467 (1975). The court's instructions must be read as a whole and in context, and individual portions will not be held prejudicial if the charge as a whole is correct. *State v. Craig and State v. Anthony*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, 464 U.S. 908, 78 L.Ed. 2d 247, 104 S.Ct. 263 (1983).

In the present case, the trial judge properly instructed the jurors that, to convict defendant, they must find beyond a reasonable doubt that he intentionally disseminated material which, when viewed in its entirety, is obscene. The judge instructed the jury that the State bore the burden of proving beyond a reasonable doubt that defendant "knew the content, character and nature of the magazines as a whole that he sold. . . ." The instructions given were a sufficient statement of the law with respect to defendant's intent and guilty knowledge. This assignment of error is overruled.

We have also reviewed defendant's other assignments of error with respect to the court's instructions to the jury. We conclude that the instructions, when construed as a whole and in context, were correct.

Finally, defendant contends that the trial court should have dismissed the charges because G.S. 14-190.1 is unconstitutional. He bases his constitutional challenge to the statute upon five asserted shortcomings: (1) that the statute fails to include scienter as an element of the proscribed conduct; (2) that it fails to provide for a prompt judicial determination of obscenity; (3) that it is

overbroad in that it does not specify that the unlawful dissemination of obscenity is limited to that dissemination which occurs in a public place; (4) that it is overbroad in its definition of "sexual conduct"; and (5) that it fails to require that material be "taken as a whole" in the determination of the material's literary, artistic, political, or scientific value. Each of these issues has previously been decided adversely to defendant. *Cinema I Video v. Thornburg, supra.* We find no error in the denial of his motion to dismiss based upon the asserted unconstitutionality of the statute.

In conclusion, we hold that defendant received a fair trial, free from prejudicial error.

No error.

Judge COZORT concurs.

Judge BECTON concurs in part and dissents in part.

Judge BECTON concurring in part and dissenting in part.

Considering the facts of this case, I concur in the majority's resolution of defendant's assignments of error concerning the exclusion of evidence.

Consistent with the views expressed in my dissent in *Cinema I Video v. Thornburg,* 83 N.C. App. 544, 351 S.E. 2d 305 (1986), I continue to believe that N.C. Gen. Stat. Sec. 14-190.1 is unconstitutional in that (1) it fails to include scienter as an element of the proscribed conduct; (2) it fails to provide for a prompt judicial determination of obscenity; and (3) it is overbroad and proscribes the private dissemination of obscenity in one's home. However, I am compelled to concur in the result reached by the majority because our Supreme Court affirmed this Court's decision in *Cinema I. Cinema I Video v. Thornburg,* 320 N.C. 485, 358 S.E. 2d 383 (1987).

And although the intractable and confusing nature of obscenity case law is seldom more apparent than in the federal decisions elaborating on "contemporary community standards," I nevertheless concur in the result reached by the majority that N.C. Gen.

State v. Mayes

Stat. Sec. 14-190.1 (1986) is not constitutionally infirm because it fails to require jurors to apply statewide community standards in determining whether materials are obscene.[1] Statewide standards are not required by the United States Constitution or the North Carolina Constitution.

I disagree with the majority's resolution of defendant's assignment of error concerning the jury instructions, and I therefore dissent.

### The Trial Court's Refusal to Define or Elaborate on the Term "Contemporary Community Standard."

Although the court's refusal to instruct the jury to apply a statewide standard was not error, the jury instruction was nevertheless improper. The trial judge charged the jury utilizing the language "contemporary community standard" without elaborating on its meaning or giving any direction to the jury to reach a consensus on the relevant community.

The majority begs the question by holding that the trial judge "permit[ted] jurors to apply the standards of the community from which they come, rather than requiring the application of a uniform statewide standard of obscenity," *ante* p. 575. We do not know what standard the jury applied, or if the jury applied any *one* standard. As defendant argues in his brief, "Each jury member was left to apply not only his or her individual assessment of what the average person might think, but also to determine from where the average person should be drawn. Some may have applied town or neighborhood standards, some countywide or some statewide notions of community acceptance."[2] And this is

---

1. Further, as a practical matter, I am not convinced that the application of a statewide standard would have benefited the defendant, since "in terms of danger to free expression, the potential for suppression seems at least as great in the application of a single [statewide] standard as in allowing distribution in accordance with local tastes . . ." because the use of a statewide standard "necessarily implies that material found tolerable in some places, but not under the [statewide] criteria, will nevertheless be unavailable where they are acceptable." *Miller v. California*, 413 U.S. 15, 33, 37 L.Ed. 2d 419, 436 (1973) n.24.

2. Defendant made a similar argument at the charge conference as the following exchange shows:

not an abstract or mere academic possibility. The prosecutor argued to the jury as follows:

> Ultimately, ladies and gentlemen of the jury, it's for you to decide the community standard and what the community standards are here in Cleveland County and what you consider to be the community.
>
>    \*   \*   \*
>
> Now, when you decide that, ladies and gentlemen, I'll ask you to think about where you live, whether it's Kings Mountain, whether it's Boiling Springs or here in the City of Shelby.

MR. SLIWA: Or Kings Mountain—the situation being where you've got jurors—Kings Mountain being in two counties, it would mean you could tell them it's—if you leave "community" undefined or even suggest to them that it's smaller than North Carolina or includes the county from which they're drawn, they're going to be asked to disregard the community—the jurors—the community that lives across the street from them because that's part of their community.

MR. BROWN: Obviously, when you have a community standard, you're going to, you know—the same book may generate a conviction in one community and not another. That's what community standard is. It depends upon how the community—and if that jury views the average adult and whatever they feel their community is.

In Charlotte—most people in Charlotte probably feel their community is just Charlotte. And I've learned now that when you come out to these more rural areas, "community" here probably doesn't mean just Shelby. It may. I don't know what they take it from. But in the more rural areas, I suspect they'd feel like their community encompasses a bit more of outlying territory, but, you know, since the legislature struck "statewide," I think they meant for juries to just base it on whatever they feel their community is; and I don't think it's for us to define that for them—

THE COURT: All right.

MR. BROWN: —in any way, shape or form.

THE COURT: All right, Request Number Twenty-one is DENIED.

MR. SLIWA: Is Your Honor going to tell the jurors that it's up to them to determine what the community is?

MR. BROWN: Just tell them they have to apply their community standard.

MR. SLIWA: Without asking them to define what the community is?

MR. BROWN: Yes.

MR. SLIWA: Specific EXCEPTION to that.

You think about your community and think about the entire county and if you live right on a county line, think of your community, whatever you consider your community to be.

\*   \*   \*

You know, the bottom line is it's your duty—you speak for the community. And the reason that the legislature put the community standard in here is that, you know, it's just entirely possible that the community in Charlotte or the community in Greensboro or the community in San Francisco or the community in Buffalo may have differing views about just what they will tolerate in these materials—what obscenity really means. And so that's why the community standard is in there and it is now the—it's your turn to speak for the community and decide what the average adult in this community will and will not tolerate as to these types of materials.

In contrast, the defense urged the jury that the standard should be a statewide one:

And I don't mean to be saying by my argument that Cleveland County is the community, because some of you folk live in Kings Mountain, and Kings Mountain, as we all know, is right on the border and a part of Kings Mountain is right over there in Gaston County. So it's not Cleveland County and it's not Gaston County. In fact, the problem is, you've got to figure out what "community" means.

\*   \*   \*

But I'll say to you, as far as what the average person thinks, it just hasn't been proved.

We tried to conduct a survey and get it in here to show you about it—what we think the survey would indicate the average person in North Carolina—because it seems to me, folks, that the standard is North Carolina. Because down here at number four, it talks about whether it's privileged or protected under the North Carolina Constitution, and we can't have one law in North Carolina for people who live in Kings Mountain and another one for the people who live in Shelby.

We've got one law for North Carolina, so it seems to me you got to think about North Carolina.

*  *  *

And where is there any evidence about what the contemporary community standard is? In fact, what is it? Ask yourself that. What is the community?

A lot of you good folks probably watch television that emanates out of Charlotte—Channel Nine and Channel Three. Some of you may take the Charlotte paper. A few of you are from Charlotte. Some of you are from Ohio. What does "community" mean? What does it mean to you?

In light of these arguments, a clarifying instruction was particularly important.

To support its conclusion that the trial "judge's instructions in this case [did not] contravene the Constitution of the United States" by failing to specify what is meant by "community," *ante* p. 574, the majority relied on *Jenkins v. Georgia*, 418 U.S. 153, 157, 41 L.Ed. 2d 642, 648 (1974). In my view, *Jenkins* should not control the disposition of this case. First, the *Jenkins* language relied upon by the majority, which effectively gives jurors unbridled discretion to determine the relevant community, seems incongruous with other language in *Jenkins* that jurors should not have "unbridled discretion in determining what is 'patently offensive.'" *Id.* at 160, 41 L.Ed. 2d at 650. More important, however, I am loathe to accept as controlling language from *Jenkins* which is based on a supposition. The *Jenkins* Court said "[we] also agree with the Supreme Court of Georgia's *implicit approval* of the trial court's instructions directing jurors to apply 'community standards' without specifying what 'community.'" *Id.* at 157, 41 L.Ed. 2d at 648. (Emphasis added.) Additionally, the language on which the majority relies is dicta. The court held that Jenkins' conviction should be reversed because the film "Carnal Knowledge" did not depict sexual conduct in a patently offensive way.

Moreover, the *Jenkins* Court's attempt to interpret *Miller v. California*, 413 U.S. 15, 37 L.Ed. 2d 419 (1973) was clarified further in *Hamling v. United States*, 418 U.S. 87, 41 L.Ed. 2d 590 (1974). The *Hamling* Court stated that "[t]he result of the *Miller* cases, . . . as a matter of constitutional law . . ., is to permit a juror sit-

ting in obscenity cases to draw on knowledge of the *community or vicinage from which he comes* in deciding what conclusion 'the average person, applying contemporary community standards' would reach in a given case." *Hamling v. United States*, 418 U.S. at 105, 41 L.Ed. 2d at 613 (emphasis added).

In my view, under the majority's interpretation, which permits a jury to define the relevant community, the statute would be void for vagueness because "people of common intelligence must necessarily guess at its meaning and differ as to its application." *See Treants Enterprises, Inc. v. Onslow County*, 83 N.C. App. 345, 350 S.E. 2d 178 (1986), *citing State v. Vestal*, 281 N.C. 517, 189 S.E. 2d 152 (1972). Neither the prosecutor nor the defense counsel could ascertain from the plain language of the statute what community should be used when determining whether the materials were patently offensive. The average merchant could hardly be expected to do so.

Separate and apart from the constitutional issues in this case, the statute itself supports my belief that defendant's conviction should not stand when the jurors may have used different standards to judge his conduct. In 1985, the North Carolina Legislature deleted the statewide community standard that had been required since 1971. In doing so, it did not intend that some or all of the twelve jurors in obscenity cases thereafter use a statewide standard. In my view, and consistent with the dictates of *Miller* and *Hamling*, the legislature intended that jurors would apply the standards of the community from which the jury pool was drawn. The *Hamling* Court said:

> Since this case was tried in the Southern District of California, and presumably jurors from throughout that judicial district were available to serve on the panel which tried petitioners, it would be the standards of that "community" upon which the jurors would draw.

418 U.S. at 105-06, 41 L.Ed. 2d at 613-14.

In their article, generally upholding the North Carolina Obscenity Statutes, Currin and Showers, while noting that defendants will often attempt to limit or expand the community and that prosecutors will in some cases choose the most morally conservative venue, conclude that "the most prudent instruction

should adopt local community standards phrased so that 'the jury is entitled to draw on its own knowledge of the moral views and sense of the average person in the community from which [he] came.' " (Footnote omitted.) Currin and Showers, Regulation of Pornography — The North Carolina Approach, 21 Wake Forest Law Review No. 2, 1986, pp. 289, 290. Because no such instruction was given in this case, defendant is entitled, in my view, to a new trial.