STATE OF NORTH CAROLINA v. JUDY FAYE WATSON

No. 8725SC423

(Filed 16 February 1988)

1. Obscenity § 2— definition based on statute—jury instruction—inadequate

A jury instruction on the definition of obscenity which is derived directly and solely from N.C.G.S. § 14-190.1(b) is necessarily incomplete and inadequate, and a proper charge would direct the jury (1) to determine patent offensiveness, like appeal to prurient interest, by applying community standards, (2) to determine value from each work "taken as a whole," and (3) to decide whether a reasonable person would find serious literary, artistic, political, or scientific value in the material, taken as a whole. Where defendant requested the first two of these instructions either expressly or in substance, the trial court's failure to include them in its charge was prejudicial error.

2. Obscenity § 3— dissemination of obscenity—material constitutionally privileged—defendant not entitled to instruction

Defendant in a prosecution for disseminating obscenity was not entitled to a jury instruction on N.C.G.S. § 14-190.1(b)(4) as to whether the material in question was constitutionally privileged or protected, since that is a question of law, not one of fact for the jury, and a correct instruction would not be augmented by the addition of this requirement.

**3. Obscenity § 3— dissemination—no "statewide" community standard**

The trial court in a prosecution for dissemination of obscenity did not err in failing to charge the jury to apply a "statewide" community standard.

**4. Obscenity § 3— dissemination—defendant's knowledge of content of materials—sufficiency of evidence**

In a prosecution of defendant for dissemination of obscenity, evidence was sufficient to allow a reasonable inference that defendant knew the character and content of the materials she disseminated where the evidence tended to show that the items purchased by a police officer were selected from a room in the bookstore containing sexually oriented devices, as well as sexually explicit materials with illustrated covers, grouped and displayed on bookshelves which were labeled according to the viewer's sexual interest; defendant was not merely a sales clerk but the store manager, from which it could reasonably be inferred that she had knowledge of and authority over the store's inventory and its arrangement; and the magazine cover and film box which the officer bought were captioned and graphically illustrated.

**5. Obscenity § 3— dissemination—"comparable materials" excluded—no error**

In a prosecution of defendant for dissemination of obscenity the trial court did not err in excluding "comparable materials" consisting of four magazines involved in other obscenity cases in which the defendants were acquitted, since three of the magazines offered were involved in prosecutions in Durham County and were therefore of little relevance in establishing the community standard in Catawba County, and though the fourth magazine was involved in a Catawba County case, there was no evidence that the acquittal was based on a jury finding that the material was not obscene.

**6. Obscenity § 2— definition—material of significant educational value not excluded—no error**

There was no merit to defendant's contention that failure to exclude from the definition of obscenity material which has serious educational value results in a violation of the right to education guaranteed by Article I, Section 15 of the N. C. Constitution, since any serious educational value of sexually explicit materials must be derived, in turn, from some serious literary, artistic, political, or scientific value.

APPEAL by defendant from *Claude S. Sitton, Judge.* Judgments entered 4 December 1986 in Superior Court, CATAWBA County. Heard in the Court of Appeals 17 November 1987.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Steven F. Bryant for the State.*

*Arthur M. Schwartz, P.C., by Arthur M. Schwartz and Michael W. Gross, Denver, Colorado; and James McElroy & Diehl, P.A., by Edward T. Hinson for defendant-appellant.*

BECTON, Judge.

Defendant, Judy Faye Watson, was charged in two bills of indictment with four counts of disseminating obscenity in violation of N.C. Gen. Stat. Sec. 14-190.1 (1986) and was convicted by a jury of two of the four counts. From judgments entered on the verdicts, defendant appeals. Her arguments on appeal relate to 1) five alleged errors in the jury instructions, 2) the denial of her motion to dismiss for insufficient evidence of scienter, 3) the exclusion of "comparable" materials offered by defendant as evidence of the community standard, and 4) the denial of her motion to dismiss the indictments based on the unconstitutionality of N.C. Gen. Stat. Sec. 14-190.1 *et seq.* For errors in the jury instructions regarding the definition of obscenity, we award defendant a new trial.

I

The State presented evidence that on 8 October 1985, Officer Steve Mueller of the Hickory Police Department entered the Imperial Popular Newsstand and Adult Bookstore in Hickory, North Carolina. After browsing for a few minutes, he selected from the materials on display the empty box for an eight millimeter film entitled *Stormy Weather #263, Swedish Erotica* and a magazine entitled *Naked Snatch*, which was encased in a clear plastic wrapper. He took the items to the cash register where defendant, manager of the store, retrieved the appropriate film from behind the counter, placed it in the box, and rang up the sale. The following day, Officer Mueller returned to the bookstore and purchased from defendant another magazine encased in clear plastic entitled *Decadent Sex Parties #1* and a videotape entitled *Hot and Juicy Videos—Intimidation.* Subsequently, defendant was arrested and charged with disseminating obscenity for the sale of these four items.

At trial, Officer Mueller described the layout and contents of the bookstore. The magazines, videotape, and film purchased by him were received in evidence and shown to the jury.

Defendant did not testify. Defense counsel called as an expert witness Dr. Charles Winick, a psychiatrist, who testified that, in his opinion, the materials were not patently offensive, did not appeal to the average person's prurient interest in sex, and

had serious scientific and other value. Similar opinion testimony was also received from Dr. Terry Cole, an expert in the field of speech and communication. The trial court refused to admit certain "comparable" sexually-oriented magazines offered by defendant as evidence of the community standard.

The jury returned a verdict acquitting defendant of the charges involving the sale of the videotape and of the magazine, *Naked Snatch*, but convicted defendant of disseminating obscenity in the sale of the eight millimeter film, *Stormy Weather*, and the magazine, *Decadent Sex Parties #1*.

## II

We begin by addressing defendant's first three arguments concerning alleged errors in the trial court's charge to the jury on the definition of obscenity.

## A

The United States Supreme Court, in *Miller v. California*, 413 U.S. 15, 37 L.Ed. 2d 419, *reh'g denied*, 414 U.S. 881, 38 L.Ed. 2d 128 (1973), set forth a three-pronged test for determining whether material is obscene:

> The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 37 L.Ed. 2d at 431 (citations omitted). While the definition of obscenity in *Miller* includes "contemporary community standards" only with reference to "prurient interest," subsequent cases applying and clarifying the *Miller* test have established that both of the first two prongs — appeal to prurient interest *and patent offensiveness* — are to be judged by a jury applying contemporary community standards. *See Pope v. Illinois*, --- U.S. ---, 95 L.Ed. 2d 439 (1987); *Smith v. United States*, 431 U.S. 291, 52 L.Ed. 2d 324 (1977); *State v. Roland*, 88 N.C. App. 19, 362 S.E. 2d 800 (1987); *State v. Anderson*, 85 N.C. App. 104, 354 S.E. 2d 264,

*review allowed*, 320 N.C. 171, 358 S.E. 2d 55 (1987). On the other hand, the third, or "value," prong of the *Miller* test must be assessed with reference to a "reasonable person" standard. *Pope; Roland.* The North Carolina Legislature, in N.C. Gen. Stat. Sec. 14-190.1(b)(1), (2), and (3), has codified the *Miller* Court's formulation almost verbatim, the only significant variation being the omission of the language "taken as a whole" from the third prong of the test. Consequently, the statute does not expressly state the requirements, clarified in *Smith* and *Pope*, that the jury assess "patent offensiveness" by applying a contemporary community standard and "value" by applying a reasonable person standard.

B

[1]   In this case, the trial court's instructions to the jury on the three-part definition of obscenity simply parroted the language of the statute, and thus failed to inform the jury (1) that contemporary community standards establish the measure by which "patent offensiveness" must be judged, (2) that the literary, artistic, political, or scientific value of each work must be decided with reference to the work "taken as a whole," and (3) that a reasonable person standard is the measure by which such value must be assessed. In her first three challenges to the jury instructions, defendant contends that each of these three omissions constitutes prejudicial error.

The State argues that the instructions given were not erroneous because they complied with *Miller* and with the statute, and because this Court has already decided the second issue in *Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 351 S.E. 2d 305 (1986). We cannot agree.

In *Cinema I*, this Court simply held, in pertinent part, that the absence of the "taken as a whole" language in N.C. Gen. Stat. Sec. 14-190.1(b)(3) (codifying the third prong of the *Miller* test) does not render the statute unconstitutional *on its face. See id.* at 552-54, 351 S.E. 2d at 311-312. In affirming that opinion, our Supreme Court pointed out that "[f]act situations are readily conceivable in which the statutes at issue, if improperly applied, would be unconstitutional." *Cinema I Video, Inc. v. Thornburg*, 320 N.C. 485, 491, 358 S.E. 2d 383, 385 (1987). In our view, a conviction under the statute is rendered constitutionally invalid if the statute is not *applied* substantially in accordance with the

*Miller* test, both as initially formulated and as subsequently construed and explained by the United States Supreme Court. This means, in part, that a jury instruction on the definition of obscenity which is derived directly and solely from our statute is necessarily incomplete and inadequate.

We thus agree with defendant's first two contentions that a proper jury charge would have directed the jury (1) to determine patent offensiveness, like appeal to prurient interest, by applying community standards, and (2) to determine value from each work "taken as a whole." Defendant requested each of these instructions, either expressly or in substance, and we therefore hold the trial court's failure to include them in its charge was error.

Moreover, we are not convinced that these omissions from the jury instructions were "harmless" errors. In instructing the jury, it is incumbent upon the trial court to "*correctly* declare and explain the law as it relates to the evidence." (Emphasis added.) *State v. Watson*, 80 N.C. App. 103, 106, 341 S.E. 2d 366, 369 (1986). Most cases in which our appellate courts have held a failure to give requested, proper jury instructions to be harmless have involved prosecutions for offenses to persons or property in which the immaterial nature of the error, the existence of strong or uncontroverted evidence that a defendant committed the act constituting a crime, or other circumstances have rendered it improbable that the error had a significant impact upon the jury's verdict. *See, e.g., State v. Patton*, 80 N.C. App. 302, 341 S.E. 2d 744 (1986); *State v. Staley*, 37 N.C. App. 18, 245 S.E. 2d 110 (1978). In obscenity cases, however, a critical issue of fact for jury determination is not merely whether a defendant did the act of disseminating, but whether the materials disseminated were obscene. In such cases, as in the present case, the sole or primary evidence offered by the State of the obscenity of materials is usually the materials themselves, the very effect or significance of which must be decided by the jury based upon the instructions it receives as to the legal definition of obscenity. Consequently, the manner in which the jury is instructed to evaluate whether a work is obscene is of fundamental importance.

The instructions given in the present case permitted an unconstitutional application of the statute because they allowed the jury to judge the obscenity of the materials in a manner inconsist-

ent with the guidelines articulated by the Supreme Court in
*Miller, Smith,* and *Pope.* We cannot tell what standard the jury
employed in assessing patent offensiveness, nor whether the jury
may have judged the material's value based on isolated passages
or depictions rather than on each work taken as a whole. Under
these circumstances, we conclude that these errors in the instruc-
tions were material and prejudicial, entitling defendant to a new
trial.

Because defendant did not request an instruction incor-
porating a reasonable person standard into the third prong of the
obscenity test nor object to the instruction given on that ground,
that issue is not properly before us on this appeal. However, we
agree with defendant that, under *Pope,* such an instruction is re-
quired, and we therefore direct the trial court, if there is a
retrial, to instruct the jury that the third prong of the test re-
quires them to decide "whether a reasonable person would find
[serious literary, artistic, political, or scientific] value in the
material, taken as a whole." *Pope* at ---, 95 L.Ed. 2d at 445.

### III

As defendant's remaining contentions concern issues which
may arise upon retrial, we also address them briefly, beginning
with two further challenges to the jury instructions defining
obscenity.

[2]   In addition to reiterating the tripartite *Miller* test, N.C. Gen.
Stat. Sec. 14-190.1(b) includes a fourth component in the statutory
definition of obscenity:

> (4) The material as used is not protected or privileged under
> the Constitution of the United States or the Constitution of
> North Carolina.

Defendant contends that she was entitled to a jury instruction in-
cluding this portion of the statute. We disagree.

Whether material is constitutionally privileged or protected
is a question of law, not one of fact for the jury. In our opinion,
correct instruction on the three elements of the *Miller* test
enables the jury to properly determine whether material is ob-
scene. Such an instruction would not be augmented in any useful
way by the addition of this "fourth element" since material found

to be obscene pursuant to a correct application of the first three tests is necessarily without constitutional protection.

**[3]** Defendant's remaining contention with respect to the jury instructions is that the trial court erred by failing to charge the jury to apply a "statewide" community standard. This issue has been decided adversely to defendant in *State v. Mayes*, 86 N.C. App. 569, 359 S.E. 2d 30, *appeal dismissed, disc. review on additional issues allowed*, 321 N.C. 122, 361 S.E. 2d 599 (1987) and, consequently, we conclude this argument is without merit.

IV

**[4]** Defendant next argues that the trial court erred by denying her motion to dismiss the charges because the State presented insufficient evidence of her intent and guilty knowledge. She correctly maintains that, to sustain a conviction, the prosecution must establish that she had knowledge of both the content and character of the materials disseminated, *see Hamling v. United States*, 418 U.S. 87, 41 L.Ed. 2d 590, *reh'g denied*, 419 U.S. 885, 42 L.Ed. 2d 129 (1974); *Roland.* And, in fact, the jury was properly instructed to that effect.

However, we are not persuaded by the contentions of defendant that neither her employment in a business that sells sexually explicit materials nor the information on the cover of a film or magazine is evidence that she knew the contents of particular materials. The State presented evidence that the items purchased by Officer Mueller were selected from a room in the bookstore containing sexually oriented devices, as well as sexually explicit materials with illustrated covers, grouped and displayed on bookshelves which were labeled according to the viewer's sexual interest — gay sex, lesbian sex, sadism, etc. Defendant was not merely a sales clerk but the store manager, from which it could be reasonably inferred that she had knowledge of and authority over the store's inventory and its arrangement. Moreover, the magazine cover and the box containing the film were captioned and graphically illustrated with photographs of males and females engaged in oral, vaginal, and group sex. This, in our opinion, may reasonably be considered some indication of the materials' contents.

We hold that the foregoing, when viewed in the light most favorable to the State, constitutes sufficient circumstantial evidence to allow a reasonable inference that defendant knew the character and content of the materials she disseminated. Therefore, this assignment of error is overruled.

V

[5] We next address defendant's assignment of error to the trial court's exclusion of "comparable materials" offered to show that the materials for which defendant was prosecuted are not patently offensive and do not appeal to a prurient interest in sex. As evidence of the community standard, defendant attempted to introduce four sexually-explicit magazines which had been involved in prior obscenity prosecutions in which the defendant had been acquitted.

In our view, this evidence was properly excluded. Three of the magazines were involved in prosecutions in Durham County and were, in light of *Mayes*, of little relevance in establishing the community standard in Catawba County. Although the fourth magazine was involved in a Catawba County case in which the person charged was acquitted, there was no evidence that the acquittal was based on a jury finding that the material was not obscene. Under these circumstances, we agree with the trial court's conclusion that any relevance of the material was so limited as to be outweighed by the dangers of misleading or confusing the jury.

We are not here confronted with, nor do we decide, the question of whether such material would be admissible if it had specifically been found not to be obscene by a jury within the same county. Nor do we address the broader question whether comparable materials whose relevance has otherwise been established may ever be admitted as evidence of community standards.

This assignment of error is overruled.

VI

Finally, we summarily reject defendant's constitutional challenges to the statute. Most of the arguments have been previously raised, and rejected by this Court, in *Cinema I, Mayes,* and *Roland.* Defendant also attempts to incorporate into her brief con-

stitutional arguments presented in the briefs filed in another case not yet decided by this Court. Any arguments presented there are not now properly before us inasmuch as former subsection (d) of Rule 28 of the Rules of Appellate Procedure which permitted incorporation of such material was repealed in 1981, and the material sought to be incorporated was not submitted as part of this record on appeal. *See State v. Lynch*, 300 N.C. 534, 268 S.E. 2d 161 (1980).

[6]   The only constitutional issue properly raised by defendant which has not yet been ruled upon by our appellate courts is whether the exclusion of the term "educational" from N.C. Gen. Stat. Sec. 14-190.1(b)(3) renders the provision invalid. Defendant maintains that failure to exclude from the definition of obscenity material which has serious educational value results in a violation of the right to education guaranteed by Article I, Section 15 of the Constitution of North Carolina.

However, we are not convinced that the right to an education involves a right to disseminate material which, but for its use in an educational context, would otherwise be deemed obscene. In our view, any serious educational value of sexually-explicit materials must be derived, in turn, from some serious literary, artistic, political, or scientific value.

This assignment of error is overruled.

## VII

For prejudicial error in the trial court's failure to instruct the jury that patent offensiveness is to be determined by applying contemporary community standards and that whether a work possesses serious value must be judged from the work taken as a whole, we order a

New trial.

Judges PHILLIPS and GREENE concur.